UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-2046
(3:22-cv-00060-MOC-SCR)

CLARENCE DELANO BELTON, JR.,

Plaintiff-Appellee,

v.

HEATHER LOVERIDGE, individually,

Defendant-Appellant.

<u>PLAINTIFF-APPELLEE'S</u>
<u>MOTION TO DISMISS DEFENDANT-APPELLANT'S APPEAL</u>
<u>AND</u>
<u>MOTION TO SUSPEND BRIEFING PENDING</u>
<u>THIS COURT'S RULING ON THE MOTION TO DISMISS</u>

Plaintiff-Appellee now comes and moves this Court pursuant to
Local Rule 27(f) to dismiss Defendant-Appellant's interlocutory appeal.
Dismissal is appropriate for the following reasons.

**A. Timeliness**

Local Rule 27(f) requires that a motion to dismiss an appeal "should
be filed within the time allowed for the filing of the response brief."
Plaintiff's response brief is not due until March 28, 2024.  This motion is
therefore timely.

## B. Factual Summary Of The Case

This case arises from a nighttime incident in which Defendant Loveridge, a police officer, shot Plaintiff Belton, also a police officer, multiple times. Both officers had responded to the home of a criminal suspect. (JA 213). The suspect had been outside, but he fled into his house through the garage. (JA 307). Plaintiff Belton and three other officers entered the garage and breached the door to the house, only to be met by a woman with a gun pointed at them. (JA 312). One of the other officers fired at the woman and accidentally hit Plaintiff Belton from behind in the arm. (JA 313). Plaintiff Belton then attempted to retreat through the open garage. (JA 313-314).

Defendant Loveridge had been assigned to the perimeter around the house but came to the entrance to the garage, entered the garage, and then returned to the entrance before the door was breached. (DE 48)[1]. As the injured Plaintiff crawled out of the garage, Defendant Loveridge fired at him fourteen times and struck him multiple times. (JA 517). She later claimed that she believed that Plaintiff Belton was a suspect. (JA 216). She did not see Plaintiff Belton with a weapon.

---

[1] The video, Plaintiff's Exhibit 3 - SEALED CPI Footage ch01-20191101-062531-062823-102000000000, was submitted as part of the Joint Appendix.

Plaintiff Belton was in fact unarmed, because he had dropped his gun by the door immediately after being shot the first time. (JA 413).

## C. Procedural History

On 18 January 2022, Plaintiff filed an amended complaint bringing claims for 1) excessive force in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983, 2) negligence, 3) assault and battery, and 4) negligent infliction of emotional distress. (JA 25). On 2 March 2023 Defendant Loveridge and Defendant Charlotte filed separate motions for summary judgment as to all claims. (JA 93, 285). On 26 September 2023, after a hearing, Judge Max Cogburn entered an order denying both motions. (JA 431); *See* Exhibit A, attached. On 4 October 2023, Defendant Loveridge entered notice of appeal of that interlocutory order. (JA 441).

On 26 February 2024, Defendant Loveridge filed her opening brief. Plaintiff's response brief deadline is 28 March 2024. The response brief has not yet been filed.

## D. The Appeal Is Interlocutory And Subject To Dismissal

When a defendant moves for summary judgment and that motion is denied, the order is not a final decision which this Court has

4

jurisdiction to review pursuant to 28 U.S.C. § 1291.  Therefore, the

denial of a motion for summary judgment is interlocutory, and appeal of

such an order is generally subject to dismissal.  *Dupree v. Younger*, 143

S. Ct. 1382, 1388 (2023).  Nonetheless, certain narrow exceptions exist

by which a party has a right to immediate appeal of an interlocutory

order.

### E. The Qualified Immunity Exception Does Not Apply When The Facts Are Unresolved.

While a district court's order denying summary judgment

generally is not immediately appealable, an order denying summary

judgment on the basis of qualified immunity may be subject to

immediate appellate review under the collateral order doctrine.

*Williams v. Strickland*, 917 F.3d 763, 767-68 (4th Cir. 2019).  This

exception is limited, though.

"[A] district court's denial of a claim of qualified immunity, <u>to the</u>

<u>extent that it turns on an issue of law</u>, is an appealable 'final decision' . .

. notwithstanding the absence of a final judgment." *Witt v. West*

*Virginia State Police, Troop 2*, 633 F.3d 272, 275 (4th Cir. 2011) (citing

*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) (emphasis original).  *Witt*

expressly clarified that "a defendant, entitled to invoke a qualified

5

immunity defense, may <u>not</u> appeal a district court's summary judgment order insofar as that order determines whether or not the pretrial record sets forth a 'genuine' issue of fact for trial." 633 F.3d at 275 (emphasis original).  The reviewing court may consider purely legal questions, but it may not reweigh the record evidence.  *Id*.

Thus an interlocutory appeal on this issue is <u>only</u> proper when the material facts are <u>undisputed</u>.  *Putman v. Harris*, 66 F.4th 181, 186-87 (4th Cir. 2023) (permitting an interlocutory appeal when "no party disputes the material facts."); *Behrens v. Pelletier*, 516 U.S. 299, 311 (1996) ("Appeal rights cannot depend on the facts of a particular case").

F. **The Summary Judgment Order Expressly States That It Denied Defendant's Motion Because The Facts Were In Dispute**.

The order under review made clear that it denied the summary judgment motion because of unresolved issues of material facts.  As a result, it did not address a pure question of law which Defendant Loveridge can immediately appeal pursuant to the collateral order doctrine and *Williams*.

The order states that "the Court finds that there are genuine issues of disputed material fact regarding the circumstances under

which Defendant Loveridge used deadly force against Plaintiff." It then specifically lists those issues of dispute, including "how well lit the garage was, what exactly Loveridge could see before she started shooting at Plaintiff, and whether Loveridge's bullets (as opposed to bullets from the first shooter) caused Plaintiff's injuries." The order goes on to describe other points of fact which the parties dispute, including whether Defendant "had the opportunity to see Plaintiff before the door was breached" and whether Defendant "could see that Plaintiff was a law enforcement officer before she shot at him." (JA 437).

The order then discusses Defendant's reliance on a qualified immunity defense. It specifically noted that "a court should deny summary judgment on qualified immunity when <u>a genuine issue of material fact exists</u> regarding the circumstances under which the officer detained or used force against the plaintiff." (JA 438) (emphasis added). It cited *Knibbs v. Momphard*, 30 F.4th 200, 216 (4th Cir. 2022) for the proposition that "disputed facts also precluded a finding of qualified immunity." It then applied that proposition to the case at bar,

holding that "[h]ere, disputed facts also preclude a finding of qualified immunity on summary judgment." (JA 439).

Thus the only way by which Defendant Loveridge can bring an immediate appeal of this interlocutory order would be to show that the District Court erred in identifying issues of disputed material fact and relying upon those issues to deny the motion. Defendant Loveridge makes no such argument. Defendant Loveridge simply ignores the disputed issues and instead argues its side of the evidence. Since she does not argue only a pure question of law as to her qualified immunity defense, her appeal must be dismissed.

## G. Defendant Loveridge Concedes That Issues Of Material Fact Existed.

Defendant Loveridge concedes in her brief that the District Court based its decision on the existence of disputed facts. She notes that "the District Court found disputed evidence as to whether Loveridge should have known Belton was an officer." Defendant Loveridge's brief then notably does not contend that this finding was erroneous. (Loveridge Brief p 27). Instead, it simply ignores the specific disputes of fact which were relevant to whether Defendant Loveridge knew that Plaintiff Belton was a police officer.

I.  <u>Lighting</u>

For example, while the Court identified the amount of lighting as a material fact about which the parties disagreed, Defendant Loveridge does not argue in her brief that the lighting evidence was undisputed and in her favor, nor does she argue that the lighting evidence was immaterial.  Instead, she simply ignores the lighting issue, leaving it out of her brief entirely.  The lighting issue was central to her version of events, however, at least until she filed her brief with this Court.  In her declaration she emphasized that "the garage was extremely cluttered and not well lit."  (JA 216).  At the summary judgment hearing, she emphasized what she contended was poor lighting: "it's a dark time early in the morning . . . very dark outside."  (JA 491).  "Again, this was a high-risk search warrant execution in the dark."  (JA 495).

Plaintiff Belton offered contrary evidence.  He described how the garage was lit by an overhead light, and that the light never went out.  (JA 337, 341).  He argued at the hearing that the video "shows that the garage was lit.  So it's not an issue of not being able to see because it was dark."  (JA 511).  The video shows that the garage was so well lit that even the license plates of cars parked <u>outside</u> the garage on the

driveway can be read, as is the writing on various boxes within the garage.  The short and stark shadows by the cars also indicate that the garage light was both bright and well positioned in a high location.  (DE 28, Plaintiff's Exhibit 3).  Thus the District Court was correct that a factual dispute existed as to the lighting.  Defendant Loveridge's brief does not contend otherwise.

II.    <u>Opportunity To See</u>

Likewise Defendant Loveridge does not argue that the District Court erred in identifying disputes of fact regarding "what exactly Loveridge could see before she started shooting at Plaintiff" and whether she "had the opportunity to see Plaintiff before the door was breached."  She only cites to her own self-serving declaration that she did not in fact see Plaintiff Belton before the shooting.  (Loveridge Br. p 27) (citing JA 216).  The ultimate question, though, is not whether some evidence supports Defendant Loveridge's position.  It is instead whether the District Court erred in finding that the parties disputed the facts on this issue.  Such a dispute did exist, because Plaintiff Belton presented contrary evidence that Defendant Loveridge had the opportunity to see him <u>and</u> actually did see him before the door was breached.

First, a jury could infer that Defendant Loveridge did actually see Plaintiff Belton based on her vantage point and the well-lit garage. Plaintiff Belton stated that he was able to see Defendant Loveridge and the other CMPD officer as he stood by the door, before the breach, when the CMPD officers came to the threshold of the garage. (JA 340). A line of sight obviously works both ways, and logically if Plaintiff Belton could see Defendant Loveridge in the well-lit garage, then she could see him as well. Plaintiff Belton is entitled to this inference. *Brosseau v. Haugen*, 543 U.S. 194, 195 (2004). Conversely, Defendant Loveridge is not entitled to the presumption that her denial was the truth.

Second, the video also includes a moment from which an observer could conclude that after Defendant Loveridge entered the garage, she came within a few feet of Plaintiff Belton and looked directly at Plaintiff Belton as he stood by the door. Her head and even her eyes turned to the corner where Plaintiff Belton was standing. (DE 23, Time Stamp 06:25:56-57)[2]. It therefore does not merely show that Defendant Loveridge could have seen Plaintiff Belton, but that she did in fact see him.

---

[2] This is visible if the video is played at maximum size and the viewer takes time to advance through the video almost frame by frame.

11

In short, Defendant Loveridge ignores the disputed evidence about her opportunity to see Plaintiff Belton, from which a jury could infer that she did actually see him.  Her contention that "there is no dispute" that she never saw him is simply incorrect.  (Loveridge Br. p 27) (citing JA 216).  Plaintiff Belton presented affirmative evidence that Defendant Loveridge did see him.  Like the lighting issue, Defendant Loveridge fails to make a meaningful argument that the District Court's finding of disputed facts on the "opportunity to see" issue was unsupported by the evidence.

## H. Defendant Loveridge Concedes That Disputed Issues Of Fact Were Material.

The District Court did not err in concluding that the lighting and "opportunity to see" issues were material and therefore precluded summary judgment.  Defendant Loveridge does not contend otherwise, and implicitly conceded that these disputed issues were in fact material.

The disputed issues concerned whether Defendant Loveridge had reason to know, or at least suspect, that the person crawling towards her could have been the officer she had seen earlier.  If Plaintiff Belton's evidence is accepted as true, as it must be at summary judgment, then Defendant Loveridge had previously seen Plaintiff Belton in a well-lit

12

garage, wearing a vest with "POLICE" in clear view across his chest, holding a gun, and working with other officers at the door. (JA 300, 311, 318, 324). She therefore knew that a person of that description was a police officer. Further, she then saw a person fitting that description crawling out of the garage, again with plenty of light to see him. The word "POLICE" on the front of his chest was not obscured by any clothing. At minimum, she should have reserved judgment before firing fourteen shots at him without a single warning.

Both the lighting and "opportunity to see" issues are material because they ultimately concern the reasonableness of Defendant Loveridge's decision to fire. Defendant Loveridge concedes the centrality of these issues by her repeated use of the term "unidentified" in her brief. If her supposed inability to identify Plaintiff Belton was not critical to her defense, then she would not have used the word "unidentified" so extensively in her brief:

- "Loveridge faced an unidentified man crawling toward her." (Loveridge Br. p 2).

- "[T]he unidentified man crawled toward her." (Loveridge Br. p 10).

- "This is a case about a police officer who shot at an unidentified man."  (Loveridge Br. p 11).

- "That unidentified man, it turned out, was a plainclothes officer." (Loveridge Br. p 11).

- "… when an officer must react to an unidentified suspect." (Loveridge Br. p 12).

- "Second later, Loveridge faced an unidentified man crawling toward her." (Loveridge Br. p 13).

- "[A]n unidentified man came as Loveridge seconds later." (Loveridge Br. p 26).

Likewise, if the identify the person crawling towards her was not material, Defendant Loveridge would not have repeatedly analogized this case to cases about "unknown" shooting victims.  (Loveridge Br. pp 12, 17, 26) (comparing the instant case to *McLenagan v. Karnes*, 27 F.3d 1002 (4th Cir. 1994) and *Milstead v. Kibler*, 243 F.3d 157, 164–65 (4th Cir. 2001) on the basis that they all involved an "unknown" victim).

Defendant Loveridge repeatedly uses the words "unidentified" and "unknown" because her ability to identify Plaintiff Belton was a central,

and therefore material, issue to her defense.  She therefore implicitly

agrees with the District Court that these disputed issues were material.

## I. Defendant Loveridge's Brief Fails To Identify Any Erroneous Questions Of Law Within The Order.

Defendant Loveridge's brief further does not identify any pure

question of law upon which the District Court erred.  This Court must

"examine the parties' appellate arguments to ensure that we only

consider those legal questions formally raised on appeal.  This step is

particularly important in interlocutory appeals regarding qualified

immunity, because a party can so focus its appellate argument on

factual disputes that it fails to raise a single legal question appropriate

for appellate review." *Witt*, 633 F.3d at 275.  Defendant Loveridge's

brief points to no portion of the order under review where the District

Court supposedly erred on a question of law.  This Court must not

construct an argument for her.  The qualified immunity exception for

interlocutory appeals of collateral orders does not apply, and the appeal

must be dismissed.

## J. The Appeal Of The Denial Of Summary Judgment On All Other Issues Must Also Be Dismissed.

The District Court also denied summary judgment as to Plaintiff Belton's claims for negligence, assault and battery, and negligent infliction of emotional distress. For the two negligence claims, the District Court repeated its finding that disputed issues of material fact about the shooting precluded summary judgment. For the assault and battery claim, the District Court noted that where § 1983 excessive force claims survive, the companion state law assault and battery claims also survive. The District Court did not apply the qualified immunity defense to any of these claims. (JA 439-440). All of these claims therefore follow the general rule, where a denial of summary judgment is interlocutory and cannot be immediately appealed.

Defendant Loveridge offers no argument to the contrary. The jurisdictional statement in her brief makes no mention of these claims at all, and her brief does not provide any basis for concluding that any exception exists to the general rule against interlocutory appeals. Defendant Loveridge, as the appellant, has the duty to establish this Court's jurisdiction over her appeal. *Acoustic Systems Inc. v. Wenger Corp.*, 207 F.3d 287, 289-90 (5th Cir. 2000). She has made no effort at all to meet that burden regarding the state law claims.

Instead, she simply adds a cursory one-paragraph argument about these claims to the end of her brief, stating that because the § 1983 claim should be dismissed, "any state law claims that stem from that same force should be dismissed as well." (Loveridge Br. p 31). The two cases upon which she relies, however, only concern the relationship between the <u>merits</u> of a § 1983 claim and a substantively related state claim. Neither case addresses the appealability of interlocutory orders denying summary judgment. In fact, neither case even mentions the word "interlocutory." The cases provide no basis for this Court to permit an immediate appeal for the interlocutory order as to those claims.

Even presuming that this Court denies Plaintiff Belton's motion to dismiss the appeal as to the § 1983 claim, any right to an interlocutory appeal for that claim does not apply to the state claims. The qualified immunity defense "is a right to immunity from certain claims, not from litigation in general . . . [A]ppealability determinations are made for classes of decisions, not individual orders in specific cases." *Behrens v. Pelletier*, 516 U.S. 299, 312 (1996). Neither the qualified immunity

exception nor any other exception permits immediate appeal of the interlocutory order regarding the state law claims.

### K. Local Rule 27(a) And Rule 27(d)(2) Compliance

In compliance with Local Rule 27(a), Plaintiff has informed Defendant of his intention to file this motion to dismiss and inquired as to whether Defendant consents to the motion or plans to file a response. Defendant has indicated that she does not consent and intends to file a response.

In compliance with Rule 27(d)(2), this motion is less than 5,200 words.

WHEREFORE, Plaintiff respectfully requests that this Court dismiss Defendant's appeal as interlocutory, both as to the § 1983 claim and as to the remaining state law claims.

FURTHER, pursuant to Local Rule 27(f)(3), Plaintiff moves for a suspension of briefing until such time as this Court has ruled on the motion to dismiss or referred it to the reviewing panel for later consideration. In the event that this Court does not grant the motion to dismiss immediately, Plaintiff respectfully requests a new briefing

schedule by which Plaintiff's response brief will be due no sooner than ten (10) days after the order on the motion.

Respectfully submitted, this 21st day of March, 2024.

/s/ *Mark L. Hayes*
Mark L. Hayes
PO Box 51387
Durham, N.C. 27717
(919)926-7878
markhayes@appealnc.com
N.C. Bar #38222
Attorney for Plaintiff-Appellee

/s/*Amanda A. Mingo*
Amanda A. Mingo, NC Bar #24423
/s/ *Katie C. Clary*
Katie C. Clary, NC Bar #39248
Attorneys for the Plaintiff
Rawls, Scheer, Clary & Mingo, PLLC
2333 Randolph Road, Ste. 100
Charlotte, NC 28207
T: 704-376-3200/F: 704-376-3200
amingo@rscmlaw.com
kclary@rscmlaw.com

CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2024, I electronically filed *Plaintiff-Appellee's Motion To Dismiss Defendant-Appellant's Appeal and Motion To Suspend Briefing*, which will send automatic notification to the following counsel of record:

Stephanie Webster
Steven Bader
Cranfill Sumner LLP
P.O. Box 30787
Charlotte, NC 28230
swebster@cshlaw.com
sbader@cshlaw.com
*Attorneys for Heather Loveridge-Appellant*

/s/ *Mark L. Hayes*
Mark L. Hayes
PO Box 51387
Durham, N.C. 27717
(919)926-7878
markhayes@appealnc.com
N.C. Bar #38222
Attorney for Plaintiff-Appellee

## <u>APPENDIX</u>

Order on Summary Judgment [Filed 26 September 2023]

Disclosure of Corporate Affiliations

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:22-cv-60-MOC-SCR**

| | |
|---|---|
| **CLARENCE DELANO BELTON, JR.,** ) | |
| ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | |
| ) | **ORDER** |
| ) | |
| **CITY OF CHARLOTTE, et al.,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by

Defendant Heather Loveridge ("Loveridge"), (Doc. No. 21), and on a Motion for Summary

Judgment by the City of Charlotte ("City"), (Doc. No. 24). The Court held a hearing on the

motions on June 22, 2023. This matter is ripe for disposition.

For the following reasons, the Court denies Defendants' summary judgment motions.

**I.     BACKGROUND**

**A.     PROCEDURAL BACKGROUND**

This lawsuit arises out of the shooting by one police officer, Defendant Heather

Loveridge, of another police officer, Plaintiff Clarence Belton, while the officers were

attempting to execute a search warrant on a known violent criminal in Charlotte, North Carolina.

Plaintiff filed this action on December 20, 2021, in the North Carolina General Court of Justice,

Mecklenburg County Superior Court, naming as Defendants Officer Loveridge and the City of

1

Charlotte. (Doc. No. 1-1). Plaintiff then filed an Amended Complaint on January 18, 2022. (Id.).

Defendant removed the action to this Court on February 11, 2022. (Doc. No. 1). Plaintiff brings

the following claims: (1) excessive use of force in violation of the Fourth Amendment to the U.S.

Constitution against Loveridge (First Cause of Action); (2) negligence against Loveridge and

City (Second Cause of Action); (3) assault and battery against Loveridge (Third Cause of

Action); and (4) negligent infliction of emotional distress against Loveridge and the City (Fourth

Cause of Action). Both Defendants have filed motions for summary judgment.

### B. UNDISPUTED FACTS

Plaintiff was hired as a police officer with the Gastonia Police Department in 2011 and

later began serving as a Task Force Officer ("TFO") with the FBI. (Pl.'s Dep., Pl.'s Ex. 1 at pp.

14, 20). In October 2019, Plaintiff was working on an investigation with the FBI's Safe Streets

Task Force, along with other members of his team. (Pl.'s Ex. 1 at p. 20). Together, the TFOs,

including Plaintiff, planned and prepared to execute a search warrant in Charlotte at the home of

Larry McConneyhead ("McConneyhead") on November 1, 2019. (Pl.'s Ex. 1 at p. 32). TFO

Brogdon obtained a federal search warrant on October 22, 2019. (Pl.'s Ex. 1 at p. 110; Def. Ex.

2).

On November 1, 2019, TFO Brogdon contacted the Charlotte-Mecklenburg Police

Department ("CMPD") and requested the department send a marked patrol unit to provide blue

lights in the area during the execution of the search warrant. (CMPD Sergeant Hoppe's Dep., Ex.

2 at p. 9). CMPD Sergeant James Hoppe selected and sent Defendant Officer Heather Loveridge

and Officer Nicholas Pezzeca, in a marked unit, to meet with TFO Brogdon. (Pl.'s Ex. 2 at p. 10;

Def. Ex. 4 ¶ 7; Def. Ex. 5 ¶ 5). At the meeting, TFO Brogdon told Defendant Loveridge and

Officer Pezzeca that they were to assist the TFOs with detaining McConneyhead should he come

outside or get into his car. (Def. Ex. 5 at ¶ 7). After the meeting, Defendant Loveridge and

Officer Pezzeca waited in their patrol car around the corner from the subject location. (Def. Ex. 4

¶ 11; Def. Ex. 5 ¶ 9).

Meanwhile, Plaintiff and TFO Derick Meek were parked in sight of McConneyhead's

house to wait for McConneyhead to come outside. (Pl.'s Ex. 1 at pp. 54, 115–16). TFOs Joshua

Hedrick and Justin Padgett were parked nearby. (Pl.'s Ex. 1 at p. 58). Plaintiff and TFO Meek

saw McConneyhead come out of his lit garage to the street, and Plaintiff and TFO Meek pulled

up and attempted to stop McConneyhead outside. (Pl.'s Ex. 1 at pp. 56–57; Def. Ex. 7; Def. Ex.

8). McConneyhead did not comply with the TFOs' request to stop; instead, he ran inside his lit

garage and into the house. (Pl.'s Ex. 1 at p. 57; Def. Ex. 8). Plaintiff called out over the radio,

"He's running!" Plaintiff and TFO Meek gave chase but paused inside the lit garage to wait for

backup when McConneyhead shut the door into the house. (Pl.'s Ex. 1 at p. 130; Ex. 3, CPI

security video).

TFO Hedrick came into the lit garage, as did Defendant Loveridge. (Ex. 1 at p. 130; Ex.

3; Def. Ex. 5 ¶ 12; Def. Ex. 7). Officer Pezzeca came near the threshold of the garage, saw

Plaintiff inside, and went to the back of the house to provide cover. (Ex. 4, video from Pezzeca's

body camera; Def. Ex. 5 ¶¶ 8, 10; Def. Ex. 7). The TFOs, including Plaintiff, prepared to ram the

door and enter the house. (Ex. At 1 pp. 131–32; Def. Ex. 6B at p. 1). TFO Meek went to retrieve

the ram, leaving Plaintiff, TFO Hendrick, and Defendant Loveridge in the lit garage. (Def. Ex.

6B at pp. 1–2; Ex. 3).

Defendant Loveridge walked further inside the garage, near the door, just a few feet from

Plaintiff. Plaintiff was wearing a bullet proof vest with the word "POLICE" across the front, but

he was wearing a blue jacket over the vest. (Ex. 3; Def. Ex. 5, ¶ 8). When TFO Meek returned

3

with the ram, TFO Padgett also entered the garage. (Ex. 3). TFOs Meek, Hendrick, Padgett and

Plaintiff set up to ram the door leading into the house. (Ex. 1 at p. 69; Ex. 3). Defendant

Loveridge stepped to the driveway at the threshold of the garage, looking toward the front door

of the house. (Ex. 3). Plaintiff knocked and announced, "Police, Search Warrant" and TFO Meek

hit the door with the ram, opening it. (Ex. 1 at pp. 67, 95; Def. Ex. 6B at p. 2). A woman stood

inside the dark interior pointing a silver revolver at them. (Ex. 1 at p. 62; Def. Ex. 6B at p. 2).

Plaintiff yelled "Gun, gun!" and fired one shot at the woman. Plaintiff then felt his right arm go

numb. (Ex. 1 at pp. 63, 136). Plaintiff turned to step toward the exit of the garage and fell to the

ground. (Ex. 1 at pp. 63–64, 137). TFO Hedrick fired eight shots toward the woman holding the

gun and the wall area around the door. (Def. Ex. 6B at p. 2).

TFO Meek moved along the side wall to exit the garage as gunfire was exchanged. (Ex.

3). TFO Padgett also backed out of the garage during the exchange. (Ex. 3). Defendant

Loveridge did not take cover. (Ex. 3). Instead, she began to fire her weapon at Plaintiff as he

crawled on the floor toward the garage exit. (Id.). Defendant Loveridge continued to shoot at

Plaintiff as he neared the threshold of the garage until she heard someone yell, 'He's a cop!" (Ex.

3; Def. Ex. 4 at ¶ 13). Loveridge fired at Plaintiff fourteen times. (Ex. 3; Ex. 5 at p. 7 (SBI

Synopsis). Plaintiff suffered multiple gunshot wounds to both arms, requiring multiple surgeries

and leaving him with permanent injuries that prevent him from being a police officer. (Ex. 6,

excerpts from Plaintiff's medical records).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a

4

verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

In reviewing a motion for summary judgment, the Court must consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). If a genuine issue of material fact exists, the motion for summary judgment must be denied. Gray v. Spillman, 925 F.2d 90, 95 (4th Cir. 1991). In determining whether a genuine issue exists, reasonable inferences from the record must be drawn in plaintiff's favor after reviewing the facts in the light most favorable to the plaintiff. See Waterman v. Batton, 393 F.3d 471, 473 (4th Cir. 2005) (citing Gray-Hopkins v. Prince George's Cnty., 309 F.3d 224, 229 (4th Cir. 2002)).

5

III.     DISCUSSION

   A.  PLAINTIFF'S EXCESSIVE FORCE CLAIM AGAINST DEFENDANT
       LOVERIDGE

Plaintiff brings an excessive force claim against Defendant Loveridge. Excessive force claims against law enforcement officers are analyzed under the Fourth Amendment's reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). The question under the totality of the circumstances is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force." Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001). In determining whether a reasonable officer on the scene would have used force, courts are to consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

An officer may reasonably "use deadly force when the officer has 'probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or others.'" Anderson, 247 F.3d at 129 (quoting Tennessee v. Garner, 471 U.S. 1, 11 (1985)). The deadly force test is thus a two-part test: (i) the officer must reasonably believe ("probable cause") that (ii) the suspect is currently posing a significant threat of harm to others. Id. Accordingly, in a deadly force case, the precise legal question is whether an objectively reasonable officer would have believed the suspect posed a serious threat to his safety or the safety of others. See Garner, 471 U.S. at 12; Graham v. Connor, 490 U.S. 386, 395; Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996).

"[T]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490

6

U.S. at 396, 109 S. Ct. 1865. Courts must consider "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving." <u>Id.</u> at 397. Courts are also instructed to focus "on the circumstances at the moment force was used and on the fact that officers on the beat are not afforded the luxury of armchair reflection." <u>Elliott v. Leavitt</u>, 99 F.3d 640, 642 (4th Cir. 1996).

Here the Court finds that there are genuine issues of disputed material fact regarding the circumstances under which Defendant Loveridge used deadly force against Plaintiff. The parties dispute how well lit the garage was, what exactly Loveridge could see before she started shooting at Plaintiff, and whether Loveridge's bullets (as opposed to bullets from the first shooter) caused Plaintiff's injuries. Plaintiff contends that the evidence, including body camera footage and home security footage, shows that Defendant Loveridge had the opportunity to see Plaintiff before the door was breached. Loveridge denies that the evidence shows this. Plaintiff further contends that the evidence shows that Loveridge could see that Plaintiff was a law enforcement officer before she shot at him. Loveridge denies that the evidence shows this, and she notes that Plaintiff's police vest was obscured by the jacket he was wearing over it. The Court finds that these disputed facts are material to the excessive force claim. In sum, the Court finds that disputed issues of material fact exist, and summary judgment is not appropriate as to the excessive force claim.

Defendant Loveridge has also asserted qualified immunity as a bar to Plaintiff's excessive force claim. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Officials who are sued for civil

7

damages are entitled to qualified immunity unless (1) the complaint sufficiently alleges a

violation of a constitutional right, and (2) the right at issue, defined at the appropriate level of

generality, was "clearly established" at the time of the alleged misconduct. Doe ex rel. Johnson

v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010).

A constitutional right is clearly established where "its contours [are] sufficiently clear

that a reasonable official would understand that what he is doing violates that right." Hope v.

Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). "[I]f there is a legitimate

question as to whether an official's conduct constitutes a constitutional violation, the official is

entitled to qualified immunity." Martin v. Saint Mary's Dep't of Soc. Servs., 346 F.3d 502, 505

(4th Cir. 2003) (internal quotation marks omitted). It is within the court's discretion to decide

"which of the two prongs of the qualified immunity analysis should be addressed first in light of

the circumstances in the particular case at hand." Doe ex rel. Johnson, 597 F.3d at 169 (quoting

Pearson, 555 U.S. at 236).

Qualified immunity does not alter the ordinary rules applicable to summary judgment

proceedings. Pritchett v. Alford, 973 F.2d 307, 313 (1992). The assertion of a qualified immunity

defense "does not mean . . . that summary judgment doctrine is to be skewed from its ordinary

operation to give special substantive favor to the defense . . ." Id. In Section 1983 law

enforcement cases, a court should deny summary judgment on qualified immunity when a

genuine issue of material fact exists regarding the circumstances under which the officer

detained or used force against the plaintiff. See Knibbs v. Momphard, 30 F.4th 200, 216 (4th Cir.

2022) (finding that "at the summary judgment stage, genuine disputed issues of material fact

preclude finding that [the decedent] posed an objectively immediate threat to [the defendant

police officer's] life as a matter of law" and finding further that disputed facts also precluded a

8

finding of qualified immunity).

Here, disputed issues of material fact also preclude a finding of qualified immunity on summary judgment. Thus, the Court declines to grant summary judgment to Defendant Loveridge based on qualified immunity.

**B.      PLAINTIFF'S STATE LAW CLAIMS**

**i. Negligence Claim as to Both Defendants**

Plaintiff further asserts that Defendant Loveridge's conduct was negligent, and that her negligence caused Plaintiff's injuries. Defendants, in turn, have alleged that Plaintiff was contributorily negligent. The Court finds genuine disputes of material fact as to this state law claim. Consequently, the Court denies the summary judgment motions as to this claim.[1]

**C. Assault and Battery Claim against Loveridge**

Where a plaintiff's Section 1983 excessive force claim survives summary judgment, companion state law assault and battery claims also survive. Rowland v. Perry, 41 F.3d 167, 174 (4th Cir. 1994) (applying North Carolina law) (where "a jury could find that no reasonable officer could have believed his conduct to be lawful in light of the circumstances known to him at the time[,] [a] parallel state law claim of assault and battery is subsumed within the federal excessive force claim and so goes forward as well."). Accordingly, Defendants' motion for summary judgment on Plaintiff's assault and battery claims are also denied.

---

[1] Defendant Loveridge argues that she should be entitled to public official immunity on Plaintiff's state law claims. However, the state law defense of public official immunity "is unavailable to officers who violate clearly established rights." Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003); Because there is a genuine dispute of material fact as to whether Defendant violated Plaintiff's clearly established rights, Defendant Loveridge is not entitled to public official immunity on summary judgment.

9

### D. Negligent Inflction of Emotional Distress as to Both Defendants

Defendants argue that Plaintiff's negligent inflction of emotional distress ("NIED") claim should be dismissed because no evidence has forecast extreme or outrageous conduct by Defendant. However, extreme or outrageous conduct is not an element of NIED. Instead, "a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." <u>Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A.</u>, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). Because material fact issues regarding the shooting remain disputed, the Court denies Defendants' summary judgment motions as to this claim.

Finally, Defendants also argue for summary judgment on Plaintiff's punitive damages claim. Based the Court is denying summary judgment as to the substantive claims, Plaintiff's punitive damages claim also survives.

### IV.    CONCLUSION

In sum, for the reasons stated herein, Defendants' summary judgment motions are denied. This matter shall proceed to trial.

**IT IS, THEREFORE, ORDERED** that:

1.     Defendants' Motions for Summary Judgment, (Doc. Nos. 21, 24), are **DENIED**.

2.     This matter shall proceed to trial.

Signed: September 26, 2023

Max O. Cogburn Jr.
United States District Judge

10

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. <u>23-2046</u>    Caption: <u>Clarence Delano Belton, Jr. vs. Heather Loveridge & City of Charlotte</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Clarence Delano Belton, Jr.</u>
(name of party/amicus)

who is <u>appellee</u>, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: __/s/ Amanda A. Mingo_____      Date: _____10/12/2023_____

Counsel for: __Clarence Delano Belton, Jr._____

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-2046__      Caption: __Belton v. Loveridge__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Defendant Heather Loveridge__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                  ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                   ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Steven A. Bader                         Date:    10-24-2023

Counsel for: Defendant Loveridge

Print to PDF for Filing