# NO. 23-2046

*In The*

# United States Court Of Appeals For The Fourth Circuit

**CLARENCE DELANO BELTON, JR.,**

*Plaintiff - Appellee,*

v.

**HEATHER LOVERIDGE,**

*Defendant - Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
AT CHARLOTTE**

---

## REPLY BRIEF OF APPELLANT

---

**Steven A. Bader**
**CRANFILL SUMNER LLP**
P.O. Box 27808
Raleigh, NC  27611
(919) 828-5100

**Stephanie H. Webster**
**CRANFILL SUMNER LLP**
P.O. Box 30787
Charlotte, NC  28230
(704) 332-8300

*Counsel for Appellant*

*Counsel for Appellant*

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES ................................................................................... ii

REPLY ARGUMENT SUMMARY ........................................................................ 1

ARGUMENT ............................................................................................................ 2

    I.    BELTON'S CONTENTION IS NOT A FACTUAL DISPUTE THAT PRECLUDES SUMMARY JUDGMENT ................................................................................... 2

    II.    BELTON HAS NOT DISTINGUISHED THIS CASE FROM THE PRECEDENTS CITED BY LOVERIDGE ......... 4

        A.    Loveridge is entitled to qualified immunity under *McLenagan* and *Milstead* ............................................... 6

        B.    Loveridge is entitled to qualified immunity under blue-on-blue cases from the sister circuits ................... 7

        C.    Belton's various arguments that Loveridge used excessive force lack support in fact or law ................... 10

    III.    THIS COURT SHOULD DIRECT SUMMARY JUDGMENT ON BELTON'S STATE LAW CLAIMS .......... 12

CONCLUSION ....................................................................................................... 13

CERTIFICATE OF COMPLIANCE .................................................................... 15

# TABLE OF AUTHORITIES

Page(s):

**Cases:**

*Aleman v. City of Charlotte,*
    80 F.4th 264 (4th Cir. 2023) ............................................................................. 11

*Anderson v. Russell,*
    247 F.3d 125 (4th Cir. 2001) ........................................................................... 10

*City of Escondido, Cal. v. Emmons,*
    586 U.S. 38 (2019) ........................................................................................... 10

*Cooper v. Sheehan,*
    735 F.3d 153 (4th Cir. 2013) ........................................................................... 11

*Franklin v. City of Charlotte,*
    64 F.4th 519 (4th Cir. 2023) ............................................................................. 11

*Glenn-Robinson v. Acker,*
    140 N.C. App. 607, 538 S.E.2d 601 (2000) .................................................... 13

*Johnson v. Jones,*
    515 U.S. 304 (1995) ...................................................................................... 3, 4

*Jones v. Shivers,*
    697 Fed. Appx. 334 (5th Cir. 2017) ............................................................. 8, 9

*Kisela v. Hughes,*
    584 U.S. 100 (2018) ......................................................................................... 10

*Malley v. Briggs,*
    475 U.S. 335 (1986) ......................................................................................... 13

*McKinney v. Duplain,*
    463 F.3d 679 (7th Cir. 2006) ..................................................................... 2-3, 4

*McLenagan v. Karnes,*
 27 F.3d 1002 (4th Cir. 1994) .................................................... *passim*

*Milstead v. Kibler,*
 243 F.3d 157 (4th Cir. 2001) ..................................................... *passim*

*Parker v. Town of Erwin,*
 243 N.C. App. 84, 776 S.E.2d 710 (2015) ....................................... 12

*Reasonover v. St. Louis Cnty., Mo.,*
 447 F.3d 569 (8th Cir. 2006) ........................................................ 3-4

*Slattery v. Rizzo,*
 939 F.2d 213 (4th Cir. 1991) ......................................................... 10

*Stanton v. Elliott,*
 25 F.4th 227 (4th Cir. 2022) ............................................................ 5

*Tennessee v. Garner,*
 471 U.S. 1 (1985) ............................................................................ 5

*Vaughn v. City of Orlando,*
 413 Fed. Appx. 175 (11th Cir. 2011) ............................................ 8, 9

*Waterman v. Batton,*
 393 F.3d 471 (4th Cir. 2005) ........................................................... 5

*Wilkins v. City of Oakland,*
 350 F.3d 949 (9th Cir. 2003) ........................................................... 9

*Young v. City of Providence ex rel. Napolitano,*
 404 F.3d 4 (1st Cir. 2005) ............................................................... 9

**Constitutional Provisions:**

U.S. Const. amend IV ............................................................................ 10

## REPLY ARGUMENT SUMMARY

Clarence Belton argues that a jury must decide whether Heather Loveridge is liable for excessive force. In his mind, this is because the district court made a finding that "Loveridge 'could see that [Belton] was a law enforcement officer before she shot at him.'"

In truth, the district court made no such finding. Rather, it characterized the above quotation as Belton's contention. A contention is not evidence. And a contention does not forestall summary judgment.

To be sure, this Court must view the facts in the light most favorable to Belton. Here, that means it must presume that right before the shooting "Loveridge had previously seen [] Belton in a well-lit garage, wearing a vest with 'POLICE' in clear view across his chest, holding a gun, and working with other officers at the door." (Doc 30, pp. 11-12) Yet, even with these presumptions, Loveridge is still entitled to summary judgment.

There is no dispute that as Loveridge turned to exit the garage, she heard gunfire during an attempted search warrant execution. Seconds later, before the literal smoke had cleared, a man inside the garage quickly crawled right at Loveridge. That man could not be identified as a

1

police officer because he wore a jacket over his police vest. Loveridge had seconds to react. And these seconds followed a chaotic encounter where Belton himself used deadly force.

The facts here align with this Court's opinions in *McLenagan v. Karnes*, 27 F.3d 1002 (4th Cir. 1994) and *Milstead v. Kibler*, 243 F.3d 157 (4th Cir. 2001). Belton has not shown otherwise. Loveridge made an honest mistake. But *McLenagan* teaches that the judiciary should not "second-guess the split-second judgment of a trained police officer merely because that judgment turns out to be mistaken, particularly where inaction could have resulted in death or serious injury to the officer and others." 27 F.3d at 1007-08.

This Court should reverse and direct summary judgment for Loveridge.

## ARGUMENT

I. BELTON'S CONTENTION IS NOT A FACTUAL DISPUTE THAT PRECLUDES SUMMARY JUDGMENT

Belton's first argument is that "this Court is bound by the District Court's findings of fact," and one of these "facts" is that "Loveridge 'could see that [Belton] was a law enforcement officer before she shot at him.'" (Doc 49, pp 7, 11-12) From there, Belton cites *McKinney v. Duplain*, 463

2

F.3d 679 (7th Cir. 2006) and *Johnson v. Jones*, 515 U.S. 304 (1995) for the idea that Loveridge's arguments for qualified immunity are beyond review. Both arguments are misguided.

For starters, the district court does not find facts on a motion for summary judgment. It is misleading for Belton to suggest that this Court is hamstrung by a "finding of fact," when the legal issues in play are subject to *de novo* review.

More to the point though, the district court made no finding that Loveridge could see that Belton was an officer before she shot at him. Belton's quote comes from the district court's efforts to summarize the parties' contentions. The district court wrote that "[Belton] further *contends* that the evidence shows that Loveridge could see that [Belton] was a law enforcement officer before she shot at him," but "Loveridge denies that the evidence shows this, and she notes that [Belton's] police vest was obscured by the jacket he was wearing over it." (JA437) (emphasis added).

The parties' contentions are not evidence. And "[e]vidence, not contentions, avoids summary judgment." *Reasonover v. St. Louis Cnty.,*

3

*Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (internal citations and quotations omitted).

Belton's cites to *McKinney* and *Johnson* are not helpful. In both cases, the plaintiff cited actual evidence – not a contention – that turned the excessive force analysis. In *McKinney*, the plaintiff offered forensic evidence that the decedent did *not* charge at the officer moments before the shooting, and whether the officer acted with objective reasonableness depended on this factual dispute. 463 F.3d at 689-90. The plaintiff in *Johnson* testified that several police officers beat him, but the officers denied this. 515 U.S. at 307. Whether the officers acted with reasonableness depended on this factual dispute. *Id*.

II.  BELTON HAS NOT DISTINGUISHED THIS CASE FROM THE PRECEDENTS CITED BY LOVERIDGE

The parties do not dispute the material facts that dictate whether Loveridge's conduct was objectively reasonable. Those facts include: (1) Loveridge and Belton did not know each other (even though they were both in the garage moments before the shooting); (2) Belton and Loveridge were never introduced to one another during pre-warrant execution planning; (3) Belton did not display his badge (even though he held a gun while he worked with other plainclothes officers at the door

4

before the shooting); and (4) Belton's jacket covered his police vest as he quickly crawled toward Loveridge (even if Loveridge could have seen the front of his vest before the shooting). (JA110, JA153, JA158-162, JA168-172, JA194-195, JA255-256, JA450, JA453, JAviii, Ex. 7)

Belton's excessive force claim is judged against an objective reasonableness standard. *Stanton v. Elliott*, 25 F.4th 227, 233 (4th Cir. 2022). Under that standard, the question is whether a reasonable officer, in the same situation as Loveridge, would have had "probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." *Waterman v. Batton*, 393 F.3d 471, 477 (4th Cir. 2005) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). This determination, whether probable cause for deadly force exists, "must focus on the moment that deadly force was used, not the whole episode." *Stanton*, 25 F.4th at 233.

This is the fundamental shortcoming with Belton's argument. He is focused on the idea that because Loveridge and Belton were in the garage before the shooting, she should have realized Belton was an officer the second deadly force was used. That is not the issue, though. Whether a reasonable officer would have perceived a lethal threat is judged at the

5

moment Belton came at Loveridge. In that moment, gunfire had just erupted in the garage. Belton covered his police vest with his jacket. And Loveridge had seconds to react. *McLenagan* and *Milstead* are the best analogs with these facts. And Belton makes minimal effort to show why Loveridge's conduct was objectively unreasonable, at the moment deadly force was used, under controlling precedent.

    A.    <u>Loveridge is entitled to qualified immunity under *McLenagan* and *Milstead*</u>

Loveridge briefed this Court's decisions in *McLenagan* and *Milstead*, two cases that explored whether an officer's mistaken shooting was reasonable. Belton casts both opinions aside with no analysis, other than to repeat his contention that Loveridge "could see that [Belton] was a law enforcement officer before she shot him." (Doc 49, p. 23) Belton's contention is not evidence. And the facts in *McLenagan* and *Milstead* align with the facts here.

In both *McLenagan* and *Milstead*, an individual came at an officer seconds after the officer's colleague shouted "gun" (*McLenagan*) or fired their own weapon (*Milstead*). In both decisions, this Court recognized that a reasonable officer would perceive a lethal threat if a nearby colleague was fired upon or threatened with a gun. *McLenagan*, 27 F.3d

6

at 1007-08; *Milstead*, 243 F.3d at 165. And, in both decisions, this Court found that a reasonable officer would have reason to fear for their own safety when another person, who could not be clearly identified as a friend, came at the officer seconds after the shooting or threat. *Id.* Loveridge faced this precise scenario here. Belton makes no attempt to argue otherwise.

    B.    <u>Loveridge is entitled to qualified immunity under blue-on-blue cases from the sister circuits</u>

In addition to *McLenagan* and *Milstead*, Loveridge briefed blue-on-blue cases from the sister circuits. Belton dismisses these cases as distinct because they "hinge on both the misidentification and absence of knowledge that the victim was an officer …" (Doc 49, p. 16). But these are the same two considerations at play here. Loveridge misidentified Belton because she did not know that Belton was an officer. In this way, the blue-on-blue cases from the sister circuits provide good guidance.

Belton's only evidence that Loveridge should have known he was an officer was Loveridge's "opportunity to see" him in the garage before the shooting. (Doc 30, pp. 11-12) That brief "opportunity to see" Belton must be viewed in the light most favorable to Belton. That brief encounter, however, does not override the two critical facts that dictate

7

reasonableness when an unidentified person comes at an officer after a shooting: (1) the threat's severity and proximity (here, an officer involved shooting mere feet away); and (2) the officer's time to react to the unidentified person (here, seconds).

The plaintiff in *Vaughn v. City of Orlando*, 413 Fed. Appx. 175, 177 (11th Cir. 2011) had the same evidence as Belton alleges – the defendant saw the plainclothes officer before the shooting. *Id.* at 178. Despite this evidence, the Eleventh Circuit directed summary judgment for the defendant. *Id.* The defendant heard gunfire, and then saw an unidentified man with a firearm. *Id.* The defendant had seconds to react to a lethal threat. *Id.* The court found these facts compelled summary judgment given the threat, the proximity, and the time to react. *Id.* It declined to armchair quarterback the situation, even if the defendant had seen the plainclothes officer before the shooting. *Id.*

The plaintiff in *Jones v. Shivers*, 697 Fed. Appx. 334, 334-35 (5th Cir. 2017) (unpublished) pointed to similar evidence. There, the parties disputed whether a supervising officer told the defendant that the plaintiff would assist with a search warrant. *Id.* Still, the defendant did not expect the plaintiff to jump the fence during the warrant execution,

8

and the defendant had seconds to react to this unanticipated threat. *Id.* As such, the Fifth Circuit affirmed summary judgment. *Id.* Belton offers no explanation for how his evidence differs from the evidence in *Vaughn* or *Jones* and, by extension, compels a different result.

Belton also makes no attempt to analogize his case to *Wilkins v. City of Oakland*, 350 F.3d 949 (9th Cir. 2003) and *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 4 (1st Cir. 2005), two cases where the courts found a material dispute as to whether an officer should have recognized their brethren before firing. In *Wilkins*, the evidence showed the officer tried to identify himself before the shooting. 350 F.3d at 953. Belton never tried to identify himself, probably because there was no time for that. In *Young*, the officer who was shot by friendly fire engaged in tactical maneuvers which demonstrated he was a trained officer and not a foe. 404 F.3d at 14. Belton crawled quickly on the floor facedown toward Loveridge, he was not engaged in a maneuver that suggested he was law enforcement.

Most telling, Belton does not cite a single case – not one – that involved similar facts and ended in summary judgment being denied for the officer who mistakenly shot. Instead, Belton stretches distinct cases

9

to serve his outcome. That process does not work in Fourth Amendment cases where "the result depends very much on the facts of each case …." *City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 42 (2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104-105 (2018)).

    C.    <u>Belton's various arguments that Loveridge used excessive force lack support in fact or law</u>.

Belton makes assorted arguments against Loveridge that cannot be squared with the undisputed facts or the controlling law. For instance, Belton argues that Loveridge's decision to shoot was unreasonable because Belton did not have a gun as he crawled out. But an officer does not have to see a gun to perceive a deadly threat. *Milstead,* 243 F.3d at 160; *McLenagan*, 27 F.3d at 1005; *Anderson v. Russell*, 247 F.3d 125, 131 (4th Cir. 2001); *Slattery v. Rizzo*, 939 F.2d 213, 214 (4th Cir. 1991).

Belton builds on this mistaken point by arguing that Loveridge had no reason to believe that Belton had a gun. That argument is not straight-face. A gunfire barrage erupted in the garage seconds before Belton came at Loveridge. Indeed, Loveridge heard gunfire seconds before Belton came at her. That is the same thing that happened in *Milstead*. It is also akin to *McLenagan*, where someone yelled "the man has got a gun" right before the plaintiff ran at the officer. And in both cases, like here, the

10

plaintiff did not have a gun. *Milstead,* 243 F.3d at 160; *McLenagan*, 27 F.3d at 1005.

After that, Belton skews the analysis with inapposite cases. He argues, in the alternative, that even if Loveridge had reason to think Belton was armed, she had no reason to think him a threat. For support, he cites *Aleman v. City of Charlotte*, 80 F.4th 264 (4th Cir. 2023), *Franklin v. City of Charlotte*, 64 F.4th 519 (4th Cir. 2023), and *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013). Those cases involved officers that encountered armed suspects, but the evidence called into question whether a reasonable officer would have perceived a deadly threat, either because the suspect may have been confused by surrender commands (*Aleman*, 80 F.4th at 292 and *Franklin*, 64 F.4th at 531-32) or because the suspect did nothing more than hold a firearm on their own property (*Cooper*, 735 F.3d at 157). These fact patterns are too distinct from this case for these holdings to offer any guidance. *McLenagan* and *Milstead*, on the other hand, fit these facts to a T.

***

Belton's position invokes a double standard. After all, Belton and his task force colleagues thought deadly force was warranted when they

11

rammed the door and shot into the house. And yet, Belton argues that Loveridge should have parsed this chaos seconds later, as gun smoke hung in the air, and realized that the plainclothes man coming at her was a friend and not a foe. Belton's position stands in direct contrast to this Court's holdings in *McLenagan* and *Milstead*. It is also inconsistent with sister circuit decisions in blue-on-blue cases.

## III. THIS COURT SHOULD DIRECT SUMMARY JUDGMENT ON BELTON'S STATE LAW CLAIMS

Belton's last argument is that his state law claims do not depend on qualified immunity. That argument is belied by the claims themselves, along with the record evidence and controlling case law.

Belton sued for negligence, assault and battery, and negligent infliction of emotional distress. (JA33-36)

The negligence claims require proof that Loveridge failed to exercise reasonable care. *See e.g. Parker v. Town of Erwin*, 243 N.C. App. 84, 110, 776 S.E.2d 710, 729-30 (2015). Because Loveridge's conduct was objectively reasonable, a jury could not find that Loveridge failed to exercise reasonable care. As a result, this Court should direct summary judgment on these claims.

The North Carolina Court of Appeals has held that "an assault [and battery] by a law enforcement officer upon a citizen can provide the basis for a civil action for damages against the officer *only* if a plaintiff can show that the officer used force against plaintiff which was *excessive* under the given circumstances." (emphasis supplied) (internal quotation marks omitted). *Glenn-Robinson v. Acker*, 140 N.C. App. 607, 625, 538 S.E.2d 601, 615 (2000). Because Loveridge's conduct was objectively reasonable, a jury could not find that Loveridge used excessive force under the circumstances. This Court should direct summary judgment on this claim too.

## CONCLUSION

The objective of qualified immunity is to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Loveridge was not plainly incompetent, and she did not knowingly violate the law. Rather, she made an innocent mistake. In turn, this Court should reverse and direct summary judgment for Loveridge.

Respectfully submitted, this 9th day of September 2024.

13

CRANFILL SUMNER LLP

BY:   <u>/s/ Steven A. Bader</u>
      Steven A. Bader
      NC Bar No. 55931
      Email: sbader@cshlaw.com
      P.O. Box 27808
      Raleigh, NC 27611
      (919) 828-5100

      Stephanie H. Webster
      NC Bar No. 12164
      Email: swebster@cshlaw.com
      P.O. Box 30787
      Charlotte, NC 28230
      (704) 332-8300

      *Counsel for Defendant-Appellant*
        *Heather Loveridge*

## CERTIFICATE OF COMPLIANCE

1. This document complies with type-volume limits because excluding the parts of the document exempted by Fed. R. App. P. 32(f): (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    this document contains <u>2,599</u> words.

2. This document complies with the typeface requirements because: it has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14-point Century Schoolbook</u>.

Dated: September 9, 2024

BY: <u>/s/ Steven A. Bader</u><br>
STEVEN A. BADER<br><br>
*Counsel for Defendant-Appellant*<br>
*Heather Loveridge*